IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-01914-MSK-MJW

EDWARD MUNIZ,

        Plaintiff,

v.

NURSE KASPAR, Colorado Department of Corrections,
DOUG ROBERTS, Health Service Administrator, Buena Vista Correctional Facility, in their
Official and Individual capacities,

        Defendants.

_____

**OPINION AND ORDER GRANTING, IN PART, MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss **(# 26)**, and the Plaintiff's response **(# 29)**; and the Plaintiff's Motion for Hearing **(# 40)**.

**FACTS**

According to the *pro se* Amended Complaint **(# 8)**, the Plaintiff is an inmate of the Colorado Department of Corrections ("CDOC"). He states that on November 2, 2006, he was "extremely sick and nauseated and had an extreme temperature." He was seen by Defendant Kaspar, a CDOC nurse. The Plaintiff states that Defendant Kaspar "didn't follow any type of medical protocol and sent me back to my unit," either because there were no doctors on duty at the time or because Defendant Kaspar declined to contact them. On or about November 6, 2006, the Plaintiff was taken to a hospital in Salida, Colorado and seen by a doctor, who opined that the Plaintiff's appendix had been ruptured for about 48 hours prior to the examination.

1

Based on these facts, the Plaintiff asserts claims against both Defendants under 42 U.S.C. §1983 for violation of his 8th Amendment rights. With regard to Defendant Kaspar, he alleges that she demonstrated "deliberate indifference to my medical needs" by failing to offer prompt medical attention for his symptoms. With regard to Defendant Roberts, who is a CDOC Health Service Administrator, the Plaintiff contends that Defendant Roberts violated the Plaintiff's 8th Amendment rights"by not having qualified medical staff" at the prison; by "fail[ing] to implement the Nursing Practice Act and Medical Practice Act" under Colorado law; by failing to supervise Defendant Kaspar; and for failure to follow "protocol to enforce policies of the Colorado Department of Corrections."

The Defendants move to dismiss the Plaintiff's claims, arguing: (i) that the Plaintiff failed to exhaust the available grievance procedure pursuant to 42 U.S.C. § 1997e(a); (ii) that the Plaintiff fails to allege sufficient personal participation by Defendant Roberts in the events of November 2, 2006; (iii) that the Plaintiff fails to state an 8th Amendment claim with regard to the alleged failure of Defendant Roberts to provide adequate medical staffing; and (iv) to the extent the Plaintiff alleges official capacity claims, the Court lacks jurisdiction over those claims.

Separately, the Plaintiff has moved for a hearing **(# 40)** on the Defendants' motion to dismiss. Because the Court rules on that motion herein, the Plaintiff's motion is denied as mot.

## ANALYSIS

**A. Standard of review**

In considering the Plaintiff's filings, the Court is mindful of his *pro se* status, and accordingly, reads his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors

and other defects in the Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve the Plaintiff of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

To the extent the Defendants seek to dismiss some claims pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Amended Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its review to the four corners of the Amended Complaint, and any documents attached thereto, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

**B. Exhaustion**

By statute, an inmate is prohibited from bringing an action under 42 U.S.C. § 1983 concerning prison conditions until the inmate has exhausted "such administrative remedies as are available." 42 U.S.C. § 1997e(a). Exhaustion is required regardless of whether the inmate is challenging systemic practices or single incidents of unconstitutional conduct, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and regardless of whether the administrative grievance procedure permits all of the remedies sought by the prisoner. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

To fully exhaust the administrative procedure, an inmate must pursue the grievance through all available levels of the process, either by completing all available appeals or by obtaining the relief sought at any stage. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir.2002); *Ross v. County of Bernalillo*, 365 F.3d 1181, 1186-87 (10th Cir.2004). If an inmate fails to comply with time limits provided in the procedure, and thereby fails to obtain consideration of the grievance on the merits at any stage, exhaustion has not been completed. *Jernigan*, 304 F.3d at 1033; *Ross*, 365 F.3d at 1186. However, where a prisoner makes a showing that the prison staff failed to supply required grievance forms or otherwise prevented the inmate from accessing the grievance procedure, the procedure is not "available" to the inmate for exhaustion purposes. *See e.g. Garcia v. Taylor*, 113 Fed. Appx. 857, 859 (10th Cir. 2004) (unpublished).

An inmate's failure to exhaust is nominally an affirmative defense that must be raised by the defendants, *Jones v. Bock*, 127 S.Ct. 910, 921 (2007), but once the defendant raises the issue and makes a facial showing of failure to exhaust, the burden shifts to the inmate to come forward with some evidence to show that he did indeed exhaust the grievance procedure. *See e.g. Stone*

4

*v. Albert*, 257 Fed.Appx. 96, 100 (10th Cir. 2007) (unpublished).

Here, the Court takes judicial notice of AR 850-04, the administrative regulation describing the grievance process, as that regulation is found on the CDOC website.[1] That regulation describes a 3-step grievance procedure that must be invoked within 30 days of the event of which the inmate complains. Each grievance can only address a single issue, and must include a description of the relief requested. A Step 1 grievance filed by the inmate is answered by the involved CDOC employee, assisted by an appointee of the head of the relevant administrative division. A Step 2 grievance is answered by the administrative head. A Step 3 grievance is answered by a specially-designated grievance officer. The inmate must advance to the next step within 5 days of receiving the response from the prior step. Each successive step in the process must incorporate all prior issues and remedy requests from the proceeding step; the failure to repeat these issues at any subsequent stage is deemed a waiver of the omitted issue/request.

The parties agree that the Plaintiff properly filed a grievance at Step 1. That grievance, attached to the Amended Complaint, is undated but bears a notation that appears to suggest that it was filed on or about November 24, 2006, less than 30 days from the November 2, 2006 incident at issue. The grievance states that "[t]his grievance is against . . . Nurse Ms Kaspar for endangering my life be denying the proper medical treatment on 11-2-06. . . I must exhaust the administrative remedies in order to file a civil suit. . . ." A CDOC official denied this grievance on or about December 14, 2006, stating "the nursing staff who saw you on 11-2-06 used the

---

[1] http://www.doc.state.co.us/index.html. Although the version of AR 850-04 available from the website is effective as of November 15, 2007, no party has asserted that the procedure has undergone substantive changes since the events at issue here.

approved DOC protocol. . . . Grievance denied."

On or about December 23, 2006,[2] the Plaintiff filed a Step 2 grievance, stating "This Step 2 grievance is against nurse staff and Nurse Kaspar for not following [the] 'so called' D.O.C. protocol . . . As a request from this grievance I would please like the person who responded to my Step 1 grievance, can you please clarify your meaning and definition of 'proper D.O.C. protocol' and what procedures you or Nurse Kaspar were following." In response dated January 7, 2007, a CDOC official stated "Your Step 1 does not clearly state the relief requested. . . . In your Step 2 you request information about CDOC nursing protocols not included in your Step 1. Consequently your grievance is denied on procedural grounds. You have not exhausted administrative remedies."

Undeterred by the response to his Step 2 grievance, the Plaintiff filed a Step 3 grievance on January 26, 2007. That grievance recited the operative facts, and responded to the findings of the Step 2 response. The Plaintiff stated that his Step 1 grievance requested a remedy, insofar as it stated "I must exhaust this Administrative Remedy in order to file a civil suit." He stated that his Step 2 grievance did not add a new request, but merely sought clarification of the "nursing protocol" mentioned in the response to his Step 1 grievance. The record does not reflect the response the Plaintiff received at Step 3, other than a letter citing heavy grievance backlog and the need for the Step 3 officer to exceed the 45-day review period provided by the grievance

---

[2]Although there is a space on the grievance form to indicate when the inmate was provided with CDOC's response, this section is not filled out on the Plaintiff' Step 1 grievance. Other evidence in the record indicates that the lapse of time may be significant. For example, the Plaintiff's Step 2 grievance was denied as late at January 7, 2007, and not provided to the Plaintiff until January 24, 2007. There being no suggestion to the contrary, the Court assumes the Plaintiff's Step 2 grievance was timely filed.

process. The Court assumes, for purposes of this motion, that the Plaintiff's Step 3 grievance was denied.[3]

In *Woodford v. Ngo*, 548 U.S. 81, 83 (2006), the Supreme Court held that exhaustion is accomplished only when a prisoner files grievances that comply with all of the procedural rules attached to the grievance procedure by the prison. It discussed the benefits of requiring full and proper exhaustion, including allowing the prison to correct errors before they blossom into litigation, creating a clear record of recent events that might facilitate later litigation, and possibly convince some unsuccessful grievants not to pursue litigation at all. *Id.* at 89. It explains that "the benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id.* at 95. Curiously, the Court's opinion handily responded to all possible arguments that could be raised in opposition to requiring compliance with all procedural aspects of the grievance procedure, save one:

> Respondent contends that requiring proper exhaustion will lead prison administrators to devise procedural requirements that are designed to trap unwary prisoners and thus to defeat their claims. . . . Corrections officials concerned with maintaining order in their institutions have a reason for creating and retaining grievance systems that provide – and that are perceived by prisoners as providing – a meaningful opportunity to raise meritorious grievances. And with respect for the possibility that prisons might create procedural requirements for the purpose of tripping up all but the most skillful prisoners, while Congress has repealed the "plain, speedy, and effective" standard [of judging whether a

---

[3]The Plaintiff has attached the final Step 3 ruling, dated November 1, 2007, to his response to the motion to dismiss. It states "When drafting a grievance you must include what remedy you are seeking. . . The only remedy you request is that you must file the grievance in order to file a civil suit, which is not a viable remedy at all. You failed to follow the grievance procedure in this matter; you have <u>not</u> exhausted your administrative remedies. The time constraints outlined in AR# 850-04 are now expired regarding these events, so there will be no further review of this matter."

7

>  > grievance system provides an adequate opportunity for exhaustion], <u>we have no occasion here to decide how such situations might be addressed</u>.

*Id.* at 102-03 (emphasis added).

Here, the Court finds that the Step 2 response to the Plaintiff's grievance was an attempt to create precisely the procedural "trap" that the Supreme Court refused to protect against. CDOC's Step 2 response is troubling in several respects. First, and most obviously, it baldly misconstrues the reason why the Plaintiff's Step 1 grievance was denied. Although the official responding to the Step 1 grievance denied it on its merits, the Step 2 official trumped that determination by declaring that the <u>Step 1</u> grievance was defective because it did not state the requested remedy. None of the justifications for the exhaustion doctrine cited in *Woodford* are served when a grievance is addressed on its merits in the first instance, and later deemed to be procedurally-deficient so as to prevent review on the merits. Moreover, the Step 2 response was arbitrary because it cited the Plaintiff for raising a "new issue" – the contents of nursing protocols – when that "new issue" was a direct response to the justification offered for denying the grievance at Step 1. This is not a situation in which the Plaintiff interjected an entirely new line of complaint or argument into the Step 2 review; it is apparent that the Plaintiff was merely sharpening the points of dispute by seeking clarification as to CDOC's justification for denying his Step 1 grievance.[4]

---

[4] Because the response to the Plaintiff's Step 3 grievance is not attached to the Complaint, nor referenced therein (except with regard to it having not been resolved), the document is not one that the Court can consider in a Rule 12 motion. Nevertheless, even if the Court could consider it, it would find that it, too, is arbitrary. It criticizes the Plaintiff for failing to specify the remedy sought. Although it is undisputed that a grievance must set forth the remedy requested, Section III(*I*) of AR 850-04 defines the term "remedy" to expressly exclude "damages for pain and suffering" which "are not remedies available to offenders." It is obvious from the

Moreover, by denying the Plaintiff's Step 2 grievance on spurious procedural grounds, CDOC effectively prevented the Plaintiff from exhausting his grievance. At that point, more than 30 days had elapsed since the event at issue, making it impossible for the Plaintiff to go back and file a "procedurally proper" grievance that could be deemed timely. The Defendants' motion criticizes the Plaintiff for "failing to properly cure the procedural error in his Step 2 grievance," but point to nothing in AR 850-04 that would seem to permit such a "cure." There is no indication that the regulation authorizes a tolling process or otherwise allows a grievance deemed procedurally-deficient at Steps 2 or 3 to be refiled and considered on its merits. In essence, it appears that any procedural error by the inmate at any point in the grievance process can result in an incurable procedural denial that, under the reasoning of *Woodford*, will defeat exhaustion.

Under the circumstances presented here, the Court cannot find that the grievance procedure was "available" to the Plaintiff after he filed his Step 2 grievance. Cases such as *Garcia* recognize that a prison grievance procedure may become "unavailable" to an inmate if prison officials interfere with the inmate's ability to utilize it. *See Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001), *cited in Garcia*. Although these cases find a grievance procedure unavailable to an inmate where the prison refused to provide the forms necessary to invoke the grievance process, an administrative remedy may be "unavailable" to an inmate for a variety of reasons, such as where "prison officials inhibit an inmates ability to utilize grievance

---

Plaintiff's statement that he intends to file a civil lawsuit over an event that had already happened that he was primarily seeking monetary damages. Nevertheless, had he expressly requested such damages, it would appear that his greivance would nevertheless have been denied on procedural grounds for requesting an unacceptable remedy. (Alternatively, one could argue that, because the Plaintiff sought a remedy that was unavailable

9

procedures" or where "the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified" *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004), *citing Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004) and *Ziemba v. Wezner*, 366 F.3d 161, 163-64 (2d. Cir. 2004). Here, the Court finds that the spurious justifications offered by CDOC for procedurally rejecting the Plaintiff's Step 2 grievance were so capricious, and the opportunity for the Plaintiff to cure any alleged default so non-existent, that the grievance procedure was no longer available to the Plaintiff as a meaningful way of seeking internal resolution of his complaint.[5] In all three steps, the Plaintiff's grievance was timely and presented his claims with sufficient specificity to enable CDOC to investigate, gather evidence, and prepare a meaningful response. In these circumstances, CDOC, having chosen to dispose of the Plaintiff's grievance on dubious procedural grounds, can hardly complain of having lost the opportunity to explore the grievance on its merits.

Accordingly, the Court finds that, to the extent he can be deemed to have failed to exhaust his administrative remedies, the Court finds that those remedies were no longer "available" to him under 42 U.S.C. § 1997e(a) after his filing of the Step 2 grievance. Therefore, the Defendants' motion to dismiss on exhaustion grounds is denied.

**C. Person participation of Defendant Roberts**

The Defendants seek the dismissal of claims against Defendant Roberts on two related

---

[5]The Court expressly limits its findings in this case to the particular facts presented. This decision is not an invitation for every inmate whose grievance was found procedurally-deficient to claim an exception to the exhaustion requirement. Only where the "procedural" defect cited by the prison is so transparently without merit as to be arbitrary and capricious on its face, coupled with a grievance procedure that does not provide a reasonable opportunity for refiling of a procedurally-compliant grievance in the event of a procedural denial, will the Court consider whether the grievance procedure has been rendered unavailable.

grounds. First, they argue that the Plaintiff has failed to allege facts showing Defendant Roberts' personal participation in the events of November 2, 2006. Second, they argue that the Plaintiff has failed to allege facts that would allow a claim against Defendant Roberts based on his oversight of the medical department.

To allege an 8th Amendment claim premised upon deliberate indifference to his medical needs, the Plaintiff must assert: (i) a sufficiently serious deprivation of medical care; and (ii) that the defendant responsible for the deprivation acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). With regard to the element of intent, "deliberate indifference" requires a state of mind more blameworthy than negligence," but "something less than acts or omissions for the very purposes of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Rather, it is a state of mind akin to recklessness, and occurs when the defendant "knows of and disregards an excessive risk to [the] inmate['s] health or safety."[6] *Id.* at 837.

To maintain a deliberate indifference claim against Defendant Roberts, the Plaintiff must allege facts showing that Defendant Roberts was "personally involved" in the decisions leading to the Plaintiff's mistreatment. *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006). The Amended Complaint does not make such allegations. The Plaintiff extensively recites the

---

[6]*Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980), suggests that "class actions challenging the entire system of health care" can raise deliberate indifference claims by "proving there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care." Although the Plaintiff here complains of the procedures overseen by Defendant Roberts, this is not a class case, and there is no reason why Defendant Roberts' culpability for the particular instance of mistreatment claimed by the Plaintiff cannot be adequately considered under the more traditional "deliberate indifference" analysis.

treatment (or lack thereof) he received at the hands of Defendant Kaspar, but does not mention Defendant Roberts' direct involvement therein. Rather, it is clear that the Plaintiff's claim against Defendant Roberts is more derivative in nature. The Amended Complaint states that "despite his knowledge of [various] illegal policy and practices in the [prison's] medical department, [Defendant Roberts] has not taken to terminate the said practice or discipline Nurse Kaspar or properly train medical staff to the proper constitutional and statutory limits to their authority."

Generally speaking, when an individual acts to deprive a plaintiff of a constitutional right, relief under § 1983 is not available against the individual's supervisor simply because of the supervisor's duty of oversight. *Pierce v. Amaranto*, 2008 WL 1931558 (10th Cir., May 1, 2008) (unpublished); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). However, there are a handful of situations in which an individual who did not personally participate in the constitutional deprivation may nevertheless be held liable. *See generally Turner v. Schultz*, 130 F.Supp.2d 1216, 1226 (D. Colo. 2001). In general, this situation can arise if Defendants Roberts is alleged to have specifically known that Defendant Kaspar was engaging in unconstitutional conduct, and despite that knowledge, failed to take action to cease the constitutional violation and prevent future harm, a claim may lie. *Id.; Tafoya v. Salazar*, 516 F.3d 912, 916, 922 (10th Cir.2008). Or, the Plaintiff might allege that Defendant Roberts was responsible for training Defendant Kaspar, and did so in such a deficient way that "future misconduct [was] almost inevitable." *Id. citing Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir.1992).

Taken in the light most favorable to the Plaintiff, the Amended Complaint adequately states a claim against Defendant Roberts on both theories. The Plaintiff alleges that Defendant

Roberts had "knowledge of . . . illegal practices" being committed by Defendant Kaspar, and that he "has not taken to terminate the said practices." Although almost entirely conclusory, this is sufficient to state a claim against Defendant Kaspar for failing to act to stop what he knew to be a constitutional violation. In addition, the Plaintiff makes a passing contention that Defendant Roberts failed to adequately train Defendant Kaspar about her constitutional obligations. Once again, this assertion is largely conclusory, but taken in the light most favorable to the Plaintiff, it is sufficient under cases like *Woodward*.[7]

Accordingly, because the Court finds that the Plaintiff has stated claims against Defendant Roberts for conduct in which Defendant Roberts personally participated, the motion to dismiss is denied.

**D. Official capacity claims**

Finally, the Defendants move to dismiss any official capacity claims asserted against them. In *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), the Supreme Court explained that an "official capacity" suit is simply an alternative way of pleading a claim against the entity employing the person sued in that capacity. The real party in interest is not the named defendant, but the entity employing him or her, and indeed, when the named defendant leaves the office he or she occupies, the defendant's successor automatically assumes his or her predecessor's role in the litigation. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). By contrast, an

---

[7]Of course, there is a vast difference between being able to <u>allege</u> facts sufficient to state a claim and being able to ultimately <u>prove</u> those facts. The Court emphasizes that, should Defendant Roberts move for summary judgment, the Plaintiff will have to come forward with more than just bald assertions as to what Defendant Roberts should or should not have known and done. Rather, the Plaintiff will have to point to specific evidence indicating the extent to which Defendant Roberts knew of and condoned Defendant Kaspar's actions, or the extent to which Defendant Roberts was personally responsible for training Defendant Kaspar.

13

individual capacity suit names the individual defendant as the real party in interest, and seeks relief against the individual for his or her own conduct. *Id.* at 27.

Portions of the Plaintiff's Amended Complaint are susceptible to an interpretation that the Plaintiff seeks relief directly against CDOC, rather than as against Defendants Roberts and Kaspar individually. To the extent that is the case, the Plaintiff has failed to plead sufficient facts to support a claim against CDOC as an entity. *See generally Monell v. Department of Social Services*, 436 U.S. 658, 690-95 (1978). Accordingly, to the extent they are alleged in the Amended Complaint, any claims against Defendants Roberts and Kaspar in their official, as opposed to individual, capacities are dismissed.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion to Dismiss **(# 26)** is **GRANTED IN PART**, insofar as the Court dismisses any official capacity claims that may be asserted here, and **DENIED IN PART**, in all other respects. The Plaintiff's Motion for Hearing **(# 40)** is **DENIED AS MOOT**.

Dated this 11th day of August, 2008

                                                 **BY THE COURT:**

                                                 Marcia S. Krieger
                                                 United States District Judge