IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-01914-MSK-MJW

EDWARD MUNIZ,

    Plaintiff,

v.

NURSE KASPAR,
DOUG ROBERTS,

    Defendants.

_____

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Objections **(#94)** to the December 12, 2008 Recommendation **(# 69)** of United States Magistrate Judge Michael J. Watanabe that the Plaintiff's Motion to Amend the Complaint **(# 60)** be granted in part and denied in part; the Plaintiff's Motion for Summary Judgment **(# 96)**, the Defendants' response **(# 99)**, and the Plaintiff's reply **(# 100)**; the Plaintiff's Objections **(# 109)** to the April 16, 2009 Order **(# 107)** of the Magistrate Judge denying the Plaintiff's Motion to Continue Settlement Conference **(# 105)**; the Defendants' Motion for Summary Judgment **(# 110)**, and the Plaintiff's response **(# 111)**; and the Plaintiff's Motion for Hearing **(# 116)**.[1]

**FACTS**

---

[1] The Court finds no need for further oral argument on the pending motions. This Order disposes of the Plaintiff's motions on their merits. Accordingly, the Plaintiff's Motion for Hearing **(# 116)** is denied as moot.

The Court will address the factual contentions in more detail as appropriate in the analysis. For purposes of background, it is sufficient to note that the Plaintiff appears *pro se*. He is, and at all times pertinent to the claims in this matter was, an inmate of the Colorado Department of Corrections ("CDOC").

On November 2, 2006, he was "extremely sick and nauseated and had an extreme temperature," and requested medical assistance from the prison medical staff. After conducting an examination, Defendant Kaspar prescribed some anti-nausea medication and returned the Plaintiff to his cell. On or about November 6, 2006, the Plaintiff again claimed of severe abdominal pain, and was taken to a hospital in Salida, Colorado and seen by a doctor, who opined that the Plaintiff's appendix had been ruptured about 48 hours prior to the examination. The Plaintiff then underwent an emergency appendectomy.

Based on these facts, the Plaintiff asserts claims against both Defendants under 42 U.S.C. §1983 for violation of his 8th Amendment rights. With regard to Defendant Kaspar, he alleges that she demonstrated "deliberate indifference to my medical needs" by failing to offer prompt medical attention for his symptoms. With regard to Defendant Roberts, who is a CDOC Health Service Administrator, the Plaintiff contends that Defendant Roberts violated his 8th Amendment rights by failing to adequately supervise and train the nursing staff.

## ANALYSIS

**A. Standard of review**

In considering the Plaintiff's filings, the Court is mindful of his *pro se* status, and accordingly, reads his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors

and other defects in the Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve the Plaintiff of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law. In these particulars, the Court applies the same standard as it would if the Plaintiff were represented by counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

### B. Plaintiff's Objections to Magistrate Judge rulings

#### 1. Ruling on motion to amend

On November 18, 2008, the Plaintiff moved **(# 60)** to amend his Complaint to add a claim under "Senate Bill 164," a provision then-pending in the Colorado legislature that would apparently deem post-surgical scars to constitute "disfigurement" under state law, and to add a claim for non-economic damages due to emotional distress, pain and suffering, etc. On December 12, 2008, the Magistrate Judge issued a Recommendation **(# 69)** that the Plaintiff's motion be granted in part, insofar as leave to amend to include a demand for non-economic damages was appropriate, and denied relief based upon Senate Bill 164 that had yet to become law, and because its application to these claims was dubious. On February 6, 2009, the Plaintiff filed timely Objections **(# 94)** to the Recommendation, acknowledging that the Magistrate Judge's ruling with regard to Senate Bill 164 was a "legitimate argument," but contending that "Plaintiff is entitled to relief for disfigurement on a federal level."

Pursuant to Fed. R. Civ. P. 72(b), the Court reviews objected-to portions of a Magistrate Judge's Recommendation *de novo*. Having done so, the Court understands the Plaintiff to

simply request that he be permitted to demand non-economic damages for disfigurement. Claims for disfigurement are a common component of an award of non-economic damages, and thus, the relief the Plaintiff seeks to amend his Complaint to seek is permitted within the scope of the Magistrate Judge's Recommendation. Because the Plaintiff Objections are based on a misunderstanding of the scope of the Magistrate Judge's Recommendation, those Objections are overruled as moot, and the Court adopts the Recommendation, granting the Plaintiff's motion to amend only insofar as the Plaintiff will be permitted to add a request for non-economic damages.

2. Motion to Continue

On April 14, 2009, the Plaintiff moved to continue **(# 105)** a settlement conference, citing the pendency of a dispositive motion. By Order dated April 16, 2009 Magistrate Judge denied **(#107)** that motion as moot, noting that no settlement conference was scheduled in the case. On April 22, 2009, the Plaintiff filed timely Objections **(# 109)** to the Magistrate Judge's Order, pointing to language in a January 13, 2009 Minute Order by the Magistrate Judge directing the parties to contact the Court to schedule a settlement conference upon the completion of the Plaintiff's deposition.

Rulings on non-dispositive issues by a Magistrate Judge are reviewed by this Court pursuant to Fed. R. Civ. P. 72(a), and will be reversed only if they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996). Accordingly, the Plaintiff's Objections will be overruled unless the Court finds that the Magistrate Judge abused his discretion or, if after viewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been made." *Ariza,* 167 F.R.D. at 133,

*citing Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988).

Here, the Court cannot find that the Magistrate Judge's Order is clearly erroneous nor that it is contrary to law. Indeed, the Magistrate Judge was correct – no settlement conference was pending at the time of the Plaintiff's Motion to Continue, and thus, there was nothing to be continued. The Plaintiff points out in his Objections that his "Motion to Continue" was simply an attempt to comply with the January 13, 2009 Order to contact the Court upon the completion of discovery and a request that no settlement conference be scheduled until the pending dispositive motion was resolved. As the Court understands it, the Plaintiff's "Motion to Continue" was not a motion at all, but merely a request with regard to the scheduling of any future settlement conference. Once again, it appears to the Court that the Plaintiff's Objections are based on a simple misunderstanding of the proceedings, and thus, the Court denies those Objections as moot and affirms the Magistrate Judge's Order denying the "Motion" to Continue.

### C.  Summary Judgment motions

Both parties have filed motions seeking summary judgment. Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary

judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment. If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment. "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a

*prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently." *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

Except as noted below, the basic facts in this case are not disputed.[2] On November 2, 2006, the Plaintiff reported to the prison infirmary, complaining of "severe pain in [his] lower-right abdomen" and nausea.[3] In response to his complaints, Defendant Kaspar undertook what is described by Defendant Roberts as the "Nursing Protocol" established by the prison medical department: she was to obtain the Plaintiff's subjective symptoms, gather objective

---

[2]The Court notes that the Plaintiff's motion makes various assertions of fact, but does not support them with an affidavit, affirmation pursuant to 28 U.S.C. § 1746, or other evidentiary material as required by Fed. R. Civ. P. 56. Nevertheless, the Court assumes that, were such a defect called to his attention, the Plaintiff would affirm the truth of his representations under 28 U.S.C. § 1746, and the Court has thus treated the Plaintiff's factual averments in his motion as being adequately supported in the record.

[3]The Plaintiff's recitations of what symptoms he conveyed to Defendant Kaspar are inconsistent. In his Motion **(# 96)**, he stated that "I indicated to defendant nurse Kaspar the problem with severe pain in my lower right abdomen and that the pain was so severe it was making me throw up," and later, that "I had pain throughout my abdomen but there is more pain in the lower right side." The Plaintiff's response **(# 111)** to the Defendants' motion makes the conclusory assertion that his symptoms "were consistent with appendicitis . . . including severe abdominal pain." By contrast, the Plaintiff's reply **(# 100)** in support of his summary judgment motion responds to an affidavit by Defendant Kaspar listing the symptoms of appendicitis with a far more detailed recitation of "the complaints I made about my condition," including "pain in my upper abdomen but more severe pain on my lower right side so severe it was making me vomit the night before, loss of appetite, . . . nausea and vomiting 3 times the night before, abdominal swelling, and I had an extended stomach due to all the air in there which shows inability to pass gas."

7

measurements of the Plaintiff's vital signs, to assess whether the immediate intervention of a medical practitioner was necessary, and, if not, to formulate an action plan.

Following the protocol, Defendant Kaspar gathered the Plaintiff's subjective complaints, although her records – which only indicate the Plaintiff complaining of "epigastral" (i.e. upper abdominal) pain in the form of "cramping" and vomiting the previous evening – do not necessarily record all of the symptoms the Plaintiff claims to have described to her.[4] (Moreover, Defendant Kaspar's affidavit, which states that "At the time of my examination, [the Plaintiff] was not experiencing sharp pain in his abdomen" appears to be directly disputed by the Plaintif, who contends that he was suffering from and reported such a symptom.) She appears to have taken the Plaintiff's vital statistics and recorded the results. Her affidavit makes no mention of the third step of the Nursing Protocol, namely, determining whether the immediate intervention of a medical provider is necessary, but one can infer from her actions that she concluded that intervention was not required. In her affidavit, Defendant Kaspar states that she did not purport to make any diagnosis of the Plaintiff, as diagnosing appendicitis "can be difficult at times given the nature of the symptoms." Instead, she "utiliz[ed] the nursing protocol" by prescribing a day of bed rest, a diet of clear liquids, the use of the anti-nausea drug Phenergan as needed, renewed contact with the medical department if nausea or severe abdominal pain continued, and a follow-

---

[4]The Plaintiff points out that Defendant Kaspar's records are themselves incomplete or internally inconsistent. Defendant Kaspar failed to complete that portion of the form that requires the inmate to rate his abdominal pain level on a scale from 1 to 10. Moreover, although Defendant Kaspar did not note "severe abdominal pain" in the portion of the form listing the Plaintiff's described symptoms, her treatment regimen indicates that the Plaintiff should contact the medical department "if severe abdominal pain . . . not better" in the ensuing days. From this, the Plaintiff argues that Defendant Kaspar's report is incomplete and that she disregarded certain of his symptoms.

up appointment with a provider in 2 weeks. Defendant Kaspar conveyed the Plaintiff's symptoms and the treatment plan to a Nurse Practitioner, Shireen Wrigley, for further monitoring of the Plaintiff's condition.

To establish an 8th Amendment claim against Defendant Kasper founded on deliberate indifference to a serious medical need, the Plaintiff must show: (i) his medical needs were serious, and (ii) the Defendant was deliberately indifferent to those needs. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir.1996). A medical need is "serious" if it has been diagnosed by a physician as requiring treatment, or is so obvious that a layperson could recognize the need for a doctor's attention. *Riddle*, 83 F.3d at 1202. With regard to the element of intent, "deliberate indifference" requires a state of mind "more blameworthy than negligent," but this can be "something less than acts or omissions for the very purposes of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. It is a state of mind akin to recklessness, and occurs when the defendant "knows of and disregards an excessive risk to [the] inmate['s] health or safety."*Id.* at 837. "Deliberate indifference" requires that the inmate demonstrate an official's actual awareness of a substantial risk of serious harm that goes ignored. *Farmer,* 511 U.S. at 835; *see Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) ("plaintiff must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it") (internal quotes omitted). It is not enough to show that a defendant provided ineffective or even negligent medical treatment. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 198 n. 5 (1989); *Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008). An Eighth Amendment violation arises only where a defendant subjectively knows of an excessive risk to

the plaintiff's safety but nevertheless disregards that risk. *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000).

The Plaintiff does not clearly articulate the theory or theories upon which he contends Defendant Kaspar violated his 8th Amendment rights. As best the Court can tell, the Plaintiff alleges that that violation occurred in two possible ways: (i) that Defendant Kaspar "misdiagnosed or improperly treated [his] medical condition," *Docket* # 96 at 2; and (ii) she "did not relay the knowledge of the severe abdominal pain to Nurse Practitioner Shireen Wrigley so she could make an appropriate referral to get medical attention" for the Plaintiff, *Docket* # 111 at 2. With regard to the latter contention, the Court finds that *Sealock* disposes of any such claim. There, the 10th Circuit affirmed the grant of summary judgment to a prison nurse alleged to have violated the 8th Amendment by, among other things, failing to adequately advise a physician's assistant of a crucial symptom suffered by an inmate. 218 F.3d at 1212 n. 7.

Thus, the Court examines whether Defendant Kaspar's treatment of the Plaintiff's condition on November 2, 2006 constitutes deliberate indifference. As noted above, there is a genuine dispute between the parties as to the particular symptoms the Plaintiff described to Defendant Kaspar on that date, and thus, again as noted above, the Court is required to evaluate each party's motion independently by reconciling that factual dispute in the light most favorable to the other party.

For purposes of the Plaintiff's motion for summary judgment, then, the Court assumes that the only symptoms described by the Plaintiff were those recorded in Defendant Kasper's records: nausea and epigastric cramping. The parties apparently agree that the Plaintiff's condition satisfies the objective element of an 8th Amendment claim, in that it presented a

10

"serious medical need." However, the Court cannot find that the evidence, taken in the light most favorable to Defendant Kaspar, establishes the subjective element of deliberate indifference. The record indicates that although vomiting and abdominal pain anywhere can be symptoms of appendicitis, many other symptoms of that condition were not present: the Plaintiff did not have a fever, abdominal distention, loss of appetite, etc. Defendant Kaspar apparently concluded that these symptoms did not indicate an acute condition requiring immediate medical intervention, and instead, prescribed a fairly basic course of treatment with continued monitoring. One might be able to say that Defendant Kaspar misdiagnosed the Plaintiff's condition, but simple misdiagnosis or mistaken treatment does not rise to the requisite state of culpability necessary to support a claim of deliberate indifference. *Self v. Crum*, 439 F.3d 1227, 1234 (10th Cir. 2006); *Sealock*, 218 F.3d at 1211, 1212 n. 7 (nurse's misdiagnosis of inmate's heart attack insufficient to establish 8th Amendment violation). Accordingly, the Plaintiff has not demonstrated an entitlement to summary judgment against Defendant Kaspar.

Turning to Defendant Kaspar's motion for summary judgment, the Court construes the facts for purposes of this motion in the light most favorable to the Plaintiff. In other words, the Court accepts (for purpose of this motion, only) the Plaintiff's contention that he described a litany of symptoms to Defendant Kaspar, including sharp lower abdominal pain, vomiting, loss of appetite, abdominal distention, etc. The question presented, then, is whether Defendant Kaspar's failure to recognize those symptoms as acute appendecitis and to presecribe immediate medical attention constitutes "deliberate indifference." To help answer this question, the Court considers the similar case of *Sealock*.

There, an inmate presented to a prison nurse with symptoms including chest pain,

sweating, and nausea. 218 F.3d at 1208. The nurse later conveyed those symptoms to a physician's assistant, although the record was unclear as to whether she advised the physician's assistant of the inmate's chest pain symptom. *Id.* The physician's assistant concluded that the only necessary treatment was Phenergan and bed rest, although he testified that, had he been aware of the inmate's chest pain symptoms, he would have immediately anticipated the possibility of an ongoing heart attack and would have summoned an ambulance. *Id.* Reversing the trial court's grant of summary judgment to the physician's assistant on the inmate's subsequent 8th Amendment claim, the 10th Circuit seized on the assistant's admission that the only appropriate treatment in the case of chest pain was referral to a hospital. *Id.* at 1211-12. That concession, coupled with disputed evidence in the record as to whether the assistant was indeed notified of the inmate's complaint of chest pain, prevented summary judgment and required the case to proceed to trial.

The critical component of the *Sealock* case was the assistant's admission that hospitalization the only appropriate medical treatment in those circumstances if chest pains were present. The 10th Circuit understood that concession to acknowledge that in those circumstances, "the standard procedure" was "to get help . . . from paramedics and other medical sources," and that "[f]ailure to summon an ambulance would . . . constitut[e] deliberate indifference to a serious medical need." *Id.* at 1211-12. That key element – the one that elevated the assistant's actions above "mere 'malpractice' or 'negligence'," *id.* at 1211 – is not present here. In *Sealock*, there was evidence that the physician's assistant had one, and only one, reasonable course of action to take in response to the inmate's symptoms; any deviation from that one response admittedly constituted deliberate indifference. Here, even assuming that Defendant Kaspar

12

should have recognized the Plaintiff's symptoms as appendicitis,[5] the Plaintiff has not come forward with any evidence that there is only <u>one</u> reasonable response to a diagnosis of appendicitis. Assuming Defendant Kaspar should have recognized the Plaintiff's symptoms as appendicitis, nothing in the record reveals what actions Defendant Kaspar would have been expected to take.

To prove a claim of deliberate indifference, the Plaintiff must show that Defendant Kaspar was <u>actually aware</u> that the treatment she was providing would expose a patient with appendicitis to an unreasonable risk of harm. *Farmer*, 511 U.S. at 835. No such evidence is presented here. There is no evidence that Defendant Kaspar recognized that the Plaintiff was suffering from an appendicitis, that she knew or should have known what the appropriate response was, or that there was only one response that was appropriate. Without evidence that there is only a single appropriate response to a diagnosis of appendicitis – or at least without evidence that any medical professional would recognize that the treatment prescribed by Defendant Kaspar would pose a risk of harm to a patient with diagnosed appendicitis – the Court cannot find that the Plaintiff has carried his burden of adducing evidence that would show that Defendant Kaspar's actions constitute "deliberate indifference." Accordingly, Defendant Kaspar is entitled to summary judgment on the 8th Amendment claim against her.

The Plaintiff's 8th Amendment claim against Defendant Roberts is somewhat more nebulous. Defendant Roberts is CDOC's Health Services Administrator, and his duties entail overseeing the operations of medical staff and supervision of, among others, the nursing staff.

---

[5]The record notes only the symptoms of appendicitis and the fact that it is "difficult to diagnose." Conceivably, the full array of symptoms described by the Plaintiff might also have pointed to other maladies as well.

Defendant Roberts asserts, without contradiction, that his duties do not extend to devising treatment protocols or training medical staff.

In the Plaintiff's summary judgment motion, he alleges that the basis for Defendant Roberts' liability is that Defendants Roberts "failed to make sure defendant nurse Kaspar followed [the nursing] protocols,"[6] and that he "failed to properly train and supervise and neglected to reprimand defendant nurse Kaspar." The Plaintiff's motion does not elaborate on these points, but in his reply brief, the Plaintiff states that Defendant Roberts knew that Defendant Kaspar had been negligent in her treatment of the Plaintiff, yet he "failed to fulfill his responsibility as Health Service Administrator by not investigating the allegations at the grievance stage," and that his "failure to reprimand defendant Kaspar for her unconstitutional behavior . . . is allowing her to make future mistakes that could cause the loss of someone's life." In his response to the Defendants' summary judgment motion, the Plaintiff states that "Defendant Roberts did absolutely nothing to monitor or supervise the care and treatment afforded the Plaintiff," that he "wholly failed to monitor and oversee the practices of and the care rendered by defendant Kaspar, and improperly delegated the entire care and treatment of the inmates to non-physicians." The Plaintiff goes on to state that "no competent HSA would have acted as he did."

To maintain a deliberate indifference claim against Defendant Roberts, the Plaintiff must allege facts showing that Defendant Roberts was "personally involved" in the decisions leading to the Plaintiff's mistreatment. *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006). Relief

---

[6]As best the Court can tell, the only way in which the Plaintiff alleges that Defendant Kaspar failed to follow the protocol is in failing to note the Plaintiff's subjective level of abdominal pain on the medical intake form.

14

under § 1983 is not available against the individual's supervisor simply because of the supervisor's duty of oversight. *Pierce v. Amaranto*, 2008 WL 1931558 (10th Cir., May 1, 2008) (unpublished); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).  However, there are a handful of situations in which an individual who did not personally participate in the constitutional deprivation may nevertheless be held liable. *See generally Turner v. Schultz*, 130 F.Supp.2d 1216, 1226 (D. Colo. 2001).  In general, this situation can arise if Defendants Roberts is alleged to have specifically known that Defendant Kaspar was engaging in unconstitutional conduct, and despite that knowledge, failed to take action to cease the constitutional violation and prevent future harm, a claim may lie. *Id.; Tafoya v. Salazar*, 516 F.3d 912, 916, 922 (10th Cir.2008).  Or, the Plaintiff might allege that Defendant Roberts was responsible for training Defendant Kaspar, and did so in such a deficient way that "future misconduct [was] almost inevitable." *Id. citing Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir.1992).

Here, the Court notes first that the Plaintiff's allegations against Defendant Roberts are entirely conclusory.  It is by no means clear on what basis the Plaintiff purports to have personal knowledge about what Defendant Roberts did and did not do with regard to Defendant Kaspar either before or after the incident at issue here.  Although the Court is prepared to treat as evidence the Plaintiff's allegations relating to things the Plaintiff himself saw or did, the Court is not prepared to accept the Plaintiff's wholesale assertions as to what may or may not have happened outside of his presence.  The Plaintiff was given an opportunity to take discovery with regard to Defendant Roberts, and the Plaintiff's failure to point to discovery responses that substantiate his contentions regarding Defendant Roberts precludes the Court from accepting

15

those assertions.[7] *See e.g. BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (party opposing summary judgment may not rest on conclusory allegations, and must point to specific evidence in the record supporting its contentions).

The Court also observes that, although couched in the language of "failure to train" or "failure to supervise," the misconduct attributed by the Plaintiff to Defendant Roberts relates entirely to actions that Defendant Roberts should have taken in response to the events at issue here – *i.e.* that Defendant Roberts became aware of Defendant Kaspar's negligence as a result of the Plaintiff's post-incident grievance and that Defendant Roberts thereafter did not reprimand Defendant Kaspar. Defendant Roberts cannot have "personally participated" in the acts giving rise to the injury to the Plaintiff if the actions alleged did not occur until after the Plaintiff's injury. *See e.g. Poolaw v. Marcantel*, 565 F.3d 721, 732-33 (10th Cir. 2009) (to establish "requisite causal connection," defendant must "set in motion a series of events that the defendant knew or should have known would cause others to deprive the plaintiff of her constitutional rights").

In addition to the above deficiencies, the Plaintiff cannot maintain an action against Defendant Roberts for failing to properly supervise Defendant Kaspar without first showing that Defendant Kaspar actually committed a constitutional violation. Because the Court grants summary judgment to Defendant Kaspar on the 8th Amendment claim against her, that same result is warranted with regard to the 8th Amendment claim against Defendant Roberts.

---

[7]The Court previously advised the Plaintiff of the need to come forward with more than "bald assertions as to what Defendant Roberts should or should not have known and done." *Docket* # 41 at n. 8.

## **CONCLUSION**

For the foregoing reasons, the Plaintiff's Objections **(#94)** are **OVERRULED** as moot. The Court **ADOPTS** the December 12, 2008 Recommendation **(# 69)** of United States Magistrate Judge Michael J. Watanabe, and the Plaintiff's Motion to Amend the Complaint **(# 60)** is **GRANTED IN PART**, insofar as the Complaint is deemed amended to include a demand for non-economic damages, and **DENIED IN PART**, insofar as the Plaintiff is not permitted to raise a claim under Senate Bill 164.  The Plaintiff's Motion for Summary Judgment **(# 96)** is **DENIED**.  The Plaintiff's Objections **(# 109)** are **OVERRULED** as moot, and the Court **AFFIRMS** the April 16, 2009 Order **(# 107)** of the Magistrate Judge.  The Defendants' Motion for Summary Judgment **(# 110)** is **GRANTED**, and judgment in favor of the Defendants shall enter contemporaneously with this Order.  The Plaintiff's Motion for Hearing **(# 116)** is **DENIED AS MOOT**.

Dated this 14th day of August, 2009

BY THE COURT:

_____

Marcia S. Krieger
United States District Judge